IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCKY DOGS LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>CITY OF SANTA ROSA,<br><br>       Defendant.<br>_____ / | No. C 10-03381 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT;**<br>**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Lucky Dogs LLC and former plaintiff David Spangenberg brought suit against the City of Santa Rosa and others in connection with the taxes levied on Lucky Dogs and the process by which Santa Rosa imposes tax penalties. See generally FAC (dkt. 26). On September 9, 2011, the Court had an initial hearing on a motion for partial summary judgment, brought by Plaintiff (dkt. 52), a motion for summary judgment, brought by the City of Santa Rosa (dkt. 39), and a motion to dismiss, brought by the City of Napa (dkt. 32). See 9/9/11 Transcript. At that hearing, the Court resolved a number of issues – and granted the motion to dismiss – but did not reach the bulk of the summary judgment motions, directing the parties to return after the completion of an administrative hearing. See id. The hearing has now taken place, and the parties have returned to ask the Court to resolve the summary judgment motions. As explained below, the Court GRANTS IN PART Plaintiff's

Motion, and GRANTS IN PART Santa Rosa's Motion.

**I.     BACKGROUND**

Plaintiff Lucky Dogs owns two apartments in Santa Rosa, California. Statement of Undisputed Facts at 1. Former plaintiff David Spangenberg is Lucky Dogs's agent for process. Id. Non-party Main Street Management is an apartment rental company based in Napa, with a business license from Napa. Id. at 2. It manages the two Santa Rosa apartments owned by Lucky Dogs. Id.

On May 5, 2010 Spangenberg received in the mail from Santa Rosa an Administrative Notice and Order for a Hearing scheduled for April 21, 2010. Id. at 4. The Notice and Order identified Spangenberg and Lucky Dogs as "Responsible Party." Id. It stated:

> YOU ARE FURTHER ORDERED to appear at an Administrative Hearing to determine whether penalties and costs should be imposed against you. The hearing is scheduled for April 21, 2010 at 1 p.m. in the City Council Chambers at 100 Santa Rosa Ave., 2nd floor Santa Rosa, CA. Any penalties and costs assessed against you at this hearing may constitute a special assessment lien against the real property on which the violation occurred. In addition, your failure to comply with these Orders may result in additional penalties and costs being assessed against you.

Id. (emphasis added). The hearing had already taken place.

The City's hearing officer, Lynda Millspaugh, issued her Administrative Enforcement Orders in both cases on May 21, 2010. Id. The Order identified Spangenberg and Lucky Dogs LLC as the "Responsible Party." Id. The Administrative Enforcement Order stated that "A hearing was held on April 21, 2010, before the undersigned regarding violations alleged by the City of Santa Rosa ("City") . . . No one appeared on behalf of the Responsible Party . . . The City has complied with all applicable notice requirements." Id. at 4-5. The Order concluded that there was substantial evidence that the Responsible Party had conducted a business in Santa Rosa without paying business tax for the years 2007-2010. FAC Ex. H at 1. It assessed numerous costs, fees, and fines against Plaintiff, including assessed fees of $689.20 and $565.34, administrative costs of $738.83, and Millspaugh's costs of $273.82. FAC Exs. H and I.

Millspaugh is a lawyer contracted to furnish hearing officer services to Santa Rosa at $200.00 per hour. Statement of Undisputed Facts at 3. Millspaugh began such work in May

2

2004. Id. at 3-4. The contract under which she was operating during the events described above ran from July 1, 2008 through June 30, 2010. See Fritsch Decl. Ex. D. The City renewed her contract for a term of July 1, 2010 through June 30, 2012. Millspaugh Decl. Ex. T.[1] "In late 2011, [Millspaugh] determined to fully retire and end [her] work as a contract Hearing Officer for the County of Sonoma and City of Santa Rosa when [she] completed [her] 2012 calendar for each agency, [she] communicated [her] intentions to City of Santa Rosa Senior Code Enforcement Officer Michael Reynolds well before April 18, 2012." Millspaugh Decl. ¶ 6.

Plaintiff and Spangenberg brought suit against Santa Rosa, Napa, field collection representative Wayne Gornowicz, and Millspaugh. FAC ¶¶ 5-8. They alleged due process violations relating to Santa Rosa's process for imposing tax penalties (specifically they complain that they were not given an opportunity to be heard, that Millspaugh has a financial interest in the outcome of the proceeding, that Millspaugh was unilaterally selected, and that no evidence supported the filing and prosecuting of charges against them) and they sought a declaratory judgment as to whether Napa or Santa Rosa is owed business taxes on the Santa Rosa apartment income. Id. ¶¶ 19-47. Plaintiff and Santa Rosa each moved for summary judgment, and Napa moved to dismiss.

At the September 9, 2011 hearing on all three motions, the Court granted the motion to dismiss and addressed some issues in connection with the motions for summary judgment, but held that "the hearing officer may rule in favor of the plaintiffs" and that if that happened, "Lucky Dogs doesn't have standing to complain about an unfair hearing officer who rules in their favor." 9/9/11 Transcript at 4, 12-13. The Court found that "the appropriate thing to do . . . is for me to stay the action, pending a hearing, which they've requested, and the outcome of the hearing." Id. at 15.

---

[1] The contract provides, in part, that Millspaugh is an independent contractor, and not a City employee, id. ¶¶ 14, 20, that she undertakes to comply with all applicable federal, state and local laws, id. ¶ 11, and that the City can terminate the agreement for cause "unrelated to the outcome of any hearing," id. ¶ 6B.

3

The City scheduled two such hearings before two of its other hearing officers, only to cancel the hearings the day before they were to occur. Spangenberg Decl. ¶¶ 2-3.[2] The City scheduled the hearing for a date on which Millspaugh was to preside over the hearing. Id. ¶ 3. Millspaugh ultimately held a hearing as to the two Lucky Dogs properties.[3] At the hearing, Millspaugh advised Lucky Dogs "that the Hearing Officer previously had determined to retire and cease work in 2012 as a contract Hearing Officer for City of Santa Rosa, and that the Hearing Officer had notified staff that she did not intend to undertake contract Hearing Officer work for City of Santa Rosa in the future." Millspaugh Decl. ¶ 8. Spangenberg maintained Lucky Dogs's objection to the City's unilaterally selected hearing officer, but proceeded with the hearing. Spangenberg Decl. ¶ 3.

On May 30, 2012, Millspaugh issued Administrative Enforcement Orders on the cases, finding:

> The record contains substantial evidence that the Responsible Party, by itself or through its appointed agent, Main Street Management, has been carrying on a business in the City of Santa Rosa, and that the Responsible Party is subject to business taxation by the City of Santa Rosa as it conducts a business within the City making it subject to the provisions of SRCC Chapter 6-04.

Fritsch Decl. Ex. S at 3. The parties each filed supplemental briefs and now ask the Court to resolve their summary judgment motions.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient

---

[2] Santa Rosa argues in its supplemental brief that the FAC does not include allegations about the subsequent administrative hearings and so fails to state a claim. See Def. Supp. Br. at 7. To the extent that this is even an appropriate argument on summary judgment, the Court rejects it. The parties proceeded as the Court instructed, and the Court deems the FAC to include allegations of the subsequent administrative hearing, as it finds that the record is replete with evidence that such hearing occurred, and occurred in the manner described herein.

[3] The parties seem to disagree about when the hearing took place. Spangenberg declares that the hearing was on March 21, 2012. Id. Millspaugh declares that it was on April 18, 2012. Millspaugh Decl. ¶ 7. The precise date does not matter, although other evidence supports the conclusion that it was on April 18, 2012. See, e.g., Def. Supp. Br. at 1.

4

evidence for a reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is material if the fact may affect the outcome of the case. See id. at 248.

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. See Celotex Corp., 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. See id. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. See id.

Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995), and noting that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. See Celotex Corp., 477 U.S. at 323.

**III.   DISCUSSION**

Plaintiff moves for partial summary judgment on all of its claims, see generally P. Mot.,[4] and Santa Rosa moves for summary judgment as to all of Plaintiff's claims, see

---

[4] The motion is "partial" because Plaintiff only seeks declaratory and injunctive relief at this time, and does not address in the motion its further requests for "damages and related claims." Id. at 2 n.1. The Court will address any remaining issues with the parties at an upcoming case management conference.

5

generally D. Mot. The Court already dismissed Count 5 in connection with the motion to dismiss. See Order Dismissing. Counts 1-4, which assert Due Process violations under section 1983 related to Santa Rosa's process for adjudicating and imposing tax penalties, remain. Defendant responded to Plaintiff's Motion by arguing that (1) Plaintiff Spangenberg lacks standing to bring such claims; (2) its procedure does not violate due process; and (3) Millspaugh and Gornowicz are entitled to immunity. The Court has already ruled as to Spangenberg's standing, see 9/9/11 Transcript at 15-16 ("I don't believe that Mr. Spangenberg has standing. I don't believe it makes a difference of any consequence in this case. He's – Lucky Dogs has standing. Pursue it."). Millspaugh was already dismissed per stipulation. See Stipulation. And the Court held at the September 9, 2011 hearing that Gornowicz had qualified immunity, leaving Santa Rosa as the only Defendant in the case. See 9/9/11 Transcript at 17. Therefore, the only issue remaining at this time is whether the City's procedure violates due process.

### A.   Count 1 (notice and opportunity to be heard)

In Count One, Plaintiff alleges a due process violation based on lack of notice and an opportunity to be heard at the administrative hearing. See FAC ¶¶ 19-24. Plaintiff asserts that "[t]he City of Santa Rosa and Wayne Gornowicz had both actual and constructive knowledge on April 21, 2010 that Plaintiffs, as the asserted 'Responsible Parties,' had not been served," because Defendant had not received a return receipt for the letter sent to Spangenberg alerting him to the April 21, 2010 hearing date. Id. ¶ 20. Plaintiff argues that "by failing to continue the Hearing until after service of the allegations had been made on Plaintiffs, . . . Defendants, and each of them, violated Plaintiff's Due Process rights under the 5th and 14th Amendments." Id. ¶ 24.

The parties confirmed at the 2011 motion hearing that Lucky Dogs did not receive notice in advance of the hearing. See 9/9/11 Transcript at 5-7. As to the requirements of notice, the Supreme Court has explained:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such nature as

6

> reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance. . . . But when notice is a person's due, process which is a mere gesture is not due process.

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950). In that case, the Court found that where the "trustee ha[d] on its books the names and addresses of the [interested parties], . . . we find no tenable ground for dispensing with a serious effort to inform them personally of the accounting, at least by ordinary mail to the record addresses." Id. at 318. The Court added: "However it may have been in former times, the mails today are recognized as an efficient and inexpensive means of communication." Id. at 319. It allowed, however, that there would be some circumstances in which the law would "require greater precautions" for notice. Id. Plaintiff argues that this is such a circumstance, because the notices to Plaintiff were sent return-receipt-requested, and no signed return receipt was returned in advance of the hearing. See P. Opp'n at 18-19.

In Jones v. Flowers, 547 U.S. 220, 225 (2006), the Court addressed adequacy of notice procedures where the government sent a taxpayer a notice of a tax sale, and that notice was returned undelivered. The Court reiterated that due process does not require "actual notice," just notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 226 (citing Mullane, 339 U.S. at 314). The Court went on to conclude that "someone who actually wanted to alert [the taxpayer] that he was in danger of losing his house would do more when the attempted notice letter was returned unclaimed, and there was more that reasonably could be done." Id. at 238.

There are two possible grounds for distinguishing Jones here. First, Jones involved the return of mail as undelivered, rather than a return receipt that was not returned. Defendant does not even argue this point, and indeed it seems a distinction without a difference: in either case, the City was on notice that the mail had not been delivered. But see Orange Cty. Com'r of Finance v. Helseth, 875 N.Y.S 2d 754, 759 (2009) (distinguishing

7

between "unclaimed" and "undeliverable" mail).[5]  Second, as Defendant argue, the hearing in <u>Jones</u> posed the irreversible danger of losing a house, rather than simply having fees assessed.  <u>See</u> D Mot at 13.  While it is true that the Supreme Court found that a greater effort at notice was needed  "especially given that it concerns the important and irreversible prospect of losing a house," <u>Jones</u>, 547 U.S. at 221, the Court did not make its holding contingent on that fact.  Moreover, the Ninth Circuit, applying <u>Jones</u> has not limited it to the context of noticees losing houses.  <u>See, e.g.</u>, <u>Collete v. U.S.</u>, 247 Fed. Appx. 87, at **1 (9th Cir. 2007) (DEA notices of administrative forfeitures inadequate under <u>Jones</u> where returned as undeliverable); <u>Yi Tu v. Nat'l Transp. Safety Bd.</u>, 470 F.3d 941, 945 (9th Cir. 2006) (FAA notices of license suspension sent via certified mail inadequate under <u>Jones</u> where FAA knew that certified mail would not reach plaintiff but first class mail would); <u>Rendon v. Holder</u>, 400 Fed. Appx. 218, 219 (9th Cir. 2010) (INS notice was adequate under <u>Jones</u> where, when certified mail was returned unclaimed, INS took "additional reasonable steps" to notify litigant of intent to deny application).

<u>Jones</u> cannot be meaningfully distinguished, and Defendant's service was inadequate under <u>Jones</u>.  There was indeed a constitutional deprivation here.  But that is not the end of the Court's inquiry.

Defendant argues in its supplemental brief that municipal liability can only attach in section 1983 actions "where plaintiff has shown that a constitutional deprivation was directly caused by a municipal policy."  <u>See</u> Def. Supp. Br. at 7-8 (quoting <u>Nadell v. Las Vegas Metro. Police Dep't</u>, 268 F.3d 924, 929 (9th Cir. 2001), abrogated on other grounds as recognized by <u>Beck v. City of Upland</u>, 527 F.3d 853, 862 n.8 (9th Cir. 2008)).  Plaintiff does not answer this argument in its own, subsequent supplemental brief.  <u>See generally</u> P. Supp. Br., and indeed the Court is aware of no evidence that the woefully inadequate service to Lucky Dogs was part of a custom, policy, or "widespread practice," or that there is evidence

---

[5] In that case – not cited by either party – the return receipt requested was returned, but returned as "unclaimed," and, particularly given the fact that a regular first class mailing of the notice was never returned, the court found that it was reasonable for the county to believe that the noticee was attempting to avoid notice by ignoring the certified mail.  <u>Id.</u>  Here, there is no evidence that the return receipt was returned at all, or that Defendant sent notice by regular first class mail.

8

of "repeated constitutional violations for which the errant municipal officers" were not held accountable.  See Nadell, 268 F.3d at 929.  In the absence of such evidence, there is no genuine issue of material fact on this issue, and the Court grants summary judgment for Defendant on Count One.

### B. Count 2 (financial interest)

In Count Two, Plaintiff alleges a due process violation based on Defendant's subjecting Plaintiff to an adjudicator with a financial interest in the outcome of the proceeding.  FAC ¶ 25.  Plaintiff asserts that Santa Rosa allows their hearing officers to award themselves fees from the losing party, which gives them a financial interest in the outcome of the case.  Id. ¶ 26.  Plaintiff also asserts that the prospects of the hearing officers obtaining future appointments by the City of Santa Rosa depends solely on the City's good will, id., which violates Plaintiff's due process rights, id. ¶¶ 27-28.  The Court agrees.

On any individual case, that a hearing officer is awarded fees from the losing party does not create a problem; the hearing officer simply wants to be paid for that one case, and is paid no matter which side loses.  But there is a problem where there are multiple cases, or the possibility of multiple cases, and where the City is a repeat player.  Then the hearing officer has a financial incentive to rule in the City's favor, because the hearing officer presumably would like the City to hire her again, and she might reasonably believe that it is more likely to do so if she rules in its favor.  Being paid by the losing party under such circumstances creates an additional incentive for the hearing officer to try to ingratiate herself with the City; ruling for the City then would not only entitle the City to the tax award/penalties sought, but would spare the City the cost of the hearing officer.

That such a system is unconstitutional is essentially the holding of Haas v Cty. of San Bernadino, 27 Cal. 4th 1017 (2002).  In that case, the court answered in the affirmative the question of "whether a temporary administrative hearing officer has a pecuniary interest requiring disqualification when the government unilaterally selects and pays the officer on an ad hoc basis and the officer's income from future adjudicative work depends entirely on the government's goodwill."  Id. at 1024.  The court explained that "while adjudicators

9

1  challenged for reasons other than financial interest have been afforded a presumption of
2  impartiality . . . adjudicators challenged for financial interest have not." <u>Id.</u> at 1025.[6]
3  Importantly, a plaintiff need not show that an adjudicator was actually biased, just that "the
4  economic realities make the design of the . . . system vulnerable to a 'possible temptation' to
5  the 'average man' as judge.'" <u>Id.</u> at 1029 (citing <u>Brown v. Vance</u>, 637 F.2d 272, 284 (5th
6  Cir. 1981)).

7       In <u>Haas</u>, the prosecuting authority could select its adjudicator at will, so long as the
8  adjudicator had five years of law practice. <u>Id.</u> at 1029.  The hearing officer in that case was
9  hired directly by the prosecuting attorney, and only to hear that case. <u>Id.</u> at 1021-22.  The
10 government's intent was to "use [the hearing officer] on assignment, as the occasion
11 suggests, in the future if she's interested in doing it and if the case should arise." <u>Id.</u> at 1022.
12 The court explained: "while the adjudicator's pay is not formally dependent on the outcome
13 of the litigation, his or her future income as an adjudicator is entirely dependent on the
14 goodwill of a prosecuting agency that is free to select its adjudicators and that must,
15 therefore, be presumed to favor its own rational self-interest by preferring those who tend to
16 issue favorable rulings." <u>Id.</u> at 1030.  The court recognized that there is a "subtle bias" at
17 issue where "the County rather than [the taxpayer] would be the repeat customer upon whose
18 goodwill, alone, the hearing officer's prospect for future employment in that capacity
19 depended." <u>Id.</u>  Therefore, the court found that "the hearing officer . . . had an impermissible
20 interest in the outcome of the litigation arising from the prospect of future employment by
21 the County, measured against the constitutional standard of a 'possible temptation to the
22 average man as a judge . . . not to hold the balance nice, clear and true.'" <u>Id.</u> at 1031
23 (quoting <u>Tumey v. Ohio</u>, 273 U.S. 510, 532 (1927)).

24      Defendant initially argued that <u>Haas</u> is distinguishable, largely because Santa Rosa
25 "did not hold a 'hearing officer try out,'" hiring her for one case only, but has a two year
26 contract with Millspaugh that it cannot terminate without good cause.  Opp'n to P. Mot at 6;

---

[6] The court further explained that due process allowed for some flexibility in administrative process, such that even the combination of investigative and adjudicative functions was permissible, but that "the rule disqualifying adjudicators with pecuniary interests applies with full force." <u>Id.</u> at 1027.

10

D. Mot. at 16 ("MILLSPAUGH's future work is governed by a public contract and express term. . . . MILLSPAUGH's future adjudicative work is governed by contract right."). Millspaugh's contract as a hearing officer was indeed for a two-year term. See Fritsch Decl. Ex. D. Nonetheless, while a two-year contract is preferable to a case-by-case, *ad hoc* appointment, it does not eliminate the Haas court's concern about "[a] procedure holding out to the adjudicator, even implicitly, the possibility of future employment in exchange for favorable decisions," which that court found created "an objective, constitutionally impermissible appearance and risk of bias." 27 Cal. 4th at 1034. "Future employment" here is not an individual case but an additional two year term. Indeed, here there is not only a hypothetical possibility of future employment – Millspaugh's contract began in 2004 and was renewed every two years thereafter. See Fritsch Decl. Ex. D. The risk that a hearing officer in that position would be incentivized to stay in the City's good graces in order to continue to have her contract renewed every two years is real.[7] Theoretically, a long enough contract term could be constitutionally acceptable (for example, a lifetime term would provide no such problematic incentives), and the Court recognizes that it would be difficult to pinpoint exactly where to draw the line between permissibly long and impermissibly short; nonetheless, a two year term is not even in the gray zone.

Defendant argues, also, that the 2010 Administrative Hearing Calendar was posted in advance, and listed twelve hearing dates, divided between four different hearing officers. See D. Mot. at 16; Fritsch Decl. Ex. C (calendar). It argues that every participant in the administrative hearing process may move to continue the hearing to a different time, which effectively means that a party wanting to avoid a given hearing officer can move the hearing to a date when another officer has been assigned. See D. Mot. at 16-17. But that argument misses the mark. The problem is not with any individual hearing officer (as Haas noted,

---

[7] Millspaugh denies "that the prospect of future compensation from the City of Santa Rosa at any time has biased or impaired [her] professional judgment as a Hearing Officer" as "[t]he remuneration and terms offered by the City of Santa Rosa do not match those offered in local private practice." Millspaugh Decl. ¶ 11; but see Conally v. Georgia, 429 U.S. 245, 251 (1977) (paying magistrates a $5 fee for granting a search warrant application, but nothing for denying warrant applications, violates due process).

11

"actual bias need not be shown," 27 Cal. 4th at 1033), but with a system that creates an improper financial incentive for <u>all hearing officers</u>; switching from one to another is no solution.[8]

Defendant argues in its supplemental brief that <u>Haas</u> is distinguishable, because, in light of Millspaugh's determination that she would retire at the end of her term, she did not intend to engage in future adjudicative work, and so her future income did not depend on the government's goodwill. <u>See</u> Def. Supp. Br. at 4-6. This argument fails to recognize that "actual bias need not be shown" by a particular officer for a system to be unconstitutional. <u>See</u> <u>Haas</u>, 27 Cal. 4th at 1033. "[T]he Constitution is concerned not only with actual bias but also with 'the appearance of justice.'" <u>Exxon Corp. v. Heinze</u>, 32 F.3d 1399, 1403 (9th Cir. 1994); <u>see also</u> <u>Caperton v. A.T. Massey Coal Co., Inc.</u>, 556 U.S. 868, 878 (2009) (explaining that in <u>Aetna Life Ins. Co. v. Lavoie</u>, 475 U.S. 813, 879 (1986), the Court found that it was not required to decide whether the particular justice was influenced, but whether the situation "would offer a possible temptation to the average . . . judge to . . . lead him not to hold the balance nice, clear and true," further explaining that "it was important that the test have an objective component").

Millspaugh's announcement that she "did not intend" to renew her contract in the future is also not nearly as significant as Santa Rosa suggests, as it was not legally binding. Although the City of Santa Rosa argued at the motion hearing that Millspaugh's was a disclaimer of the kind of future employment at issue in <u>Haas</u>, the disclaimer was entirely unenforceable. What would prevent Millspaugh from announcing later that she wished to renew her contract after all? What would prevent Millspaugh from adjudicating Lucky Dogs's cases while thinking in the back of her head that she might renew her contract after

---

[8] The argument is particularly ineffective in this case, where Santa Rosa twice moved the date of the subsequent hearing and it ended up back in front of Millspaugh. Spangenberg Decl. ¶¶ 2-3

12

1 all? People rethink inclinations to retire with some frequency.[9] Millspaugh's personal
2 circumstances therefore do not save the City from itself.

3 There are some solutions at Santa Rosa's disposal. For example, the Haas court
4 explained that a county could either establish an office of county hearing officer or contract
5 with the state Office of Administrative Hearings for an administrative law judge. See 27 Cal.
6 4th at 1037. It also posited that "a county that wished to continue appointing temporary
7 hearing officers on an ad hoc basis might adopt the rule that no person so appointed will be
8 eligible for a future appointment until after a predetermined period of time long enough to
9 eliminate any temptation to favor the county." Id. at 1038. This is reminiscent to the Court's
10 observation at the motion hearing that all hearing officers could make legally binding
11 "disclaimers" against future employment. In Coffman Specialties, Inc. v. Dept. of Transp.,
12 176 Cal. App. 4th 1135, 1152-53 (2009), the court found that an arbitral process in which
13 both parties had to mutually agree to the arbitrator if the arbitrator has previously been a
14 hearing officer meant that the arbitrator was not depending on the government's goodwill
15 "alone" for future employment. There too, a neutral committee made up of an equal number
16 of government and industry voting representatives picked the potential arbitrators, and the
17 arbitrators had to be recertified every seven years. Id. at 1153.

18 Santa Rosa's current system of unilaterally selecting hearing officers and hiring them
19 to renewable two year terms "[holds] out to the adjudicator, even implicitly, the possibility of
20 future employment in exchange for favorable decisions," and creates "an objective,
21 constitutionally impermissible appearance and risk of bias." See Haas, Cal. 4th at 1034. In

---

[9] See, e.g., Perez Hilton, Cher Says This 'Farewell Tour' Is Her Last (March 6, 2012, 11:30 PM), http://perezhilton.com/2012-03-06-cher-says-farewell-tour-is-her-last#.UNNojqxSmSo ("The news has some fans (and haters) asking just how many farewell tours can one artist have? . . . There you have it! Ya know, unless she changes her mind."); Brett Favre, Wikipedia, http://en.wikipedia.org/wiki/Brett_Favre ("Retirement Speculation Through the Years . . . 2008: In early March, Favre announces that he is retiring from the Green Bay Packers. . . . In June, Favre said he told head coach Mike McCarthy he wanted to come back to the team. . . . 2009: In February, Favre said he retired. . . . In July, Childress said Favre would not be coming out of retirement. However in August Favre announced he would come back and play for the Vikings. . . . 2010: . . . he informed the team that he would not be coming back for another season. However, two weeks later he told teammates . . . he was coming back for another season. 2011: In January, Favre filed retirement papers with the NFL. In December, a report from ESPN-Chicago indicated that Favre would be open to coming back from retirement if the Chicago Bears were interested.").

13

1  short, it deprives taxpayers of due process. Accordingly, the Court grants summary judgment
2  to Plaintiff on Count Two.

### C. Count Three (unilateral appointment)

In <u>Count Three</u>, Plaintiff complains that Millspaugh was unilaterally appointed, which "violated Plaintiffs' Due Process rights." Comp. ¶ 30.[10] But a hearing officer being unilaterally appointed by the city is not, in and of itself, a due process violation. Thus, in <u>Morongo Band of Mission Indians</u>, 45 Cal.4th 731, 734-36 (2009), where the Morongo Band requested a hearing about a water license, and the State Water Resources Control Board selected as a hearing officer a member of the Board (which also employed the prosecuting attorney), who had also advised the Board on unrelated matters, the California Supreme Court found that there was no due process violation. <u>Id.</u> at 741. The court explained, "[i]n the absence of financial or other personal interest, and when rules mandating an agency's internal separation of functions and prohibiting ex parte communications are observed, the presumption of impartiality can be overcome only by specific evidence demonstrating actual bias or a particular combination of circumstances creating an unacceptable risk of bias." <u>Id.</u>[11] If the Board's process in <u>Morongo Band</u> was proper, then certainly the lone fact of a hearing officer being unilaterally appointed is insufficient to support a due process violation here. <u>See also</u> <u>Haas</u>, 27 Cal. 4th at 1031 ("no generally applicable principle of constitutional law permits the affected person in such a case to select the adjudicator.").[12] To the extent this

---

[10] The Complaint is somewhat unclear. While Count Three only discusses the unilateral appointment of Millspaugh, <u>see</u> FAC ¶ 30, its title references not only Millspaugh's unilateral appointment but also her pecuniary interest, <u>see id.</u> at 9. This Order assumes that Count Three is based only on her unilateral appointment.

[11] Plaintiff cited <u>Morongo Band</u> to support the opposite point, <u>see</u> P. Mot. at 18-19; it does not.

[12] Plaintiff raises <u>United States v. Washington</u>, 157 F.3d 630, 656 (9th Cir. 1998), in which the Ninth Circuit held, where each of four parties proposed a special master and then one was chosen at random, that "due process is violated if there is a seventy-five percent chance that Appellants' [three defendants adverse to an Indian tribe] master will be selected." <u>See</u> P. Supp. Br. at 4-5. Here, as Plaintiff notes, "the City has 100 percent control of the selection of the hearing officer." <u>Id.</u> at 5. But <u>Washington</u> can be distinguished here for a couple of reasons. First, it was the district court there that set up a defective system for appointing special masters – no one would argue that one party to a district court litigation should be permitted to unilaterally select a special master – while here there is ample precedent for cities appointing hearing officers. Moreover, in <u>Washington</u>, 157 F.3d at 660-61, the court

14

claim relies only on Millspaugh's unilateral appointment, the Court grants summary judgment to Santa Rosa on Count Three.

### D.     Count Four (prosecuting charges)

In Count Four, Plaintiff alleges that "by making, publishing and prosecuting and causing to be made, printed, published, and prosecuted charges against David Spangenberg with respect to the operations of [the Santa Rosa apartments] without credible evidence supporting such charges," and by doing the same "against David Spangenberg and Lucky Dogs LLC" when Main Street Management managed the apartments, Santa Rosa violated Plaintiff's substantive and procedural due process rights. FAC ¶¶ 32, 33. Plaintiff further alleges that Santa Rosa's conduct "shocks the conscience." Id. ¶ 34.

It is not entirely clear what Plaintiff is arguing, and the parties' papers hardly address this count. To the extent Plaintiff objects to Defendant's pursuing charges against Lucky Dogs, that objection is not well founded. Indisputably, the apartments were in Santa Rosa, and Lucky Dogs, the owner of the apartments, had not paid taxes on income earned from the apartments to the City of Santa Rosa. Whether it is in fact appropriate for Lucky Dogs to pay taxes to Santa Rosa, given that Main Street Management paid taxes on that same income in Napa, is not for this Court to say, in light of the Tax Injunction Act (the basis for this Court granting Napa's motion to dismiss). But to argue that there is no "credible evidence" that charges were appropriate against Lucky Dogs is wrong.

To the extent Plaintiff's argument is that identifying Spangenberg as the "responsible party" and pursuing charges against him is a constitutional violation, that argument makes more sense, but should nonetheless lose. Given Spangenberg's roles as Lucky Dogs's agent for service of process, attorney, and principal, it makes sense that Santa Rosa identified him as a person responsible for Lucky Dogs's tax payments. While Santa Rosa would have been wrong if it concluded that Spangenberg was personally liable for any of Lucky Dogs's debts,

---

found that each master had been selected "because of a real or perceived bias." Here, the Court is assuming that this Count does not challenge Millspaugh's pecuniary interest, and "adjudicators challenged for reasons other than financial interest have been afforded a presumption of impartiality." See Haas, 27 Cal. 4th at 1025.

15

it is not clear that that was its conclusion.[13]  In addition, Plaintiff points to no authority finding that such a mistake constitutes a due process violation.  Santa Rosa's mistake, if indeed it was a mistake, was all the more reasonable in light of Spangenberg's conversation with Gornowicz in advance of the hearing in which Spangenberg allegedly stated, "he is atty and says he just doesn't pay any bill city sends him to collect money. . . ."  Ex. I to Admin. Hearing Packet.  Gornowicz could have reasonably understood from this conversation that Spangenberg pays the bills for Lucky Dogs – and in fact, he does.  See P. Reply at 1 ("Santa Rosa was paid . . . by Mr. Spangenberg from Lucky Dogs LLC's business account").  Santa Rosa's listing of Spangenberg as a Responsible Person might have been legally inaccurate, but Plaintiff offers no legal support for it being a due process violation.

The Court therefore grants summary judgment to Santa Rosa on Count Four.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment for Plaintiff on Count 2, and GRANTS summary judgment for Santa Rosa on Counts 1, 3 and 4.  The Court will issue an injunction pertaining to Count 2 in a separate order.

**IT IS SO ORDERED.**

Dated: December 21, 2012

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

---

[13] According to Santa Rosa's municipal code section 1-30.030(B), "'responsible person' means the person or persons responsible for the event or incident and may include any of the following regarding the property where the violation exists . . . (1) An owner of record; (2) A manager of the property; (3) One in charge of the premises; (4) An occupant of the premises; (5) A user." Fritsch Decl. Ex. B.

G:\CRBALL\2010\3381\order re MSJs.wpd                16